Filed 5/15/15  P. v. Yates CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MELINDA LEE YATES,<br><br>        Defendant and Appellant. | A140330<br><br>(Solano County<br>Super. Ct. No. FCR270728) |

Defendant Melinda Lee Yates pled no contest to grand theft by embezzlement and was ordered to pay restitution.  Defendant was later found in violation of her probation for failing to make restitution payments.  In connection with the violation, defendant was ordered to perform five hours of community service per week.  Defendant now argues the trial court abused its discretion because there is no evidence she had the resources to make the required payments or that she willfully violated the terms of her probation.  We agree and reverse.

## I.  BACKGROUND

Defendant was charged in a complaint, filed October 1, 2009, with one count of grand theft by embezzlement.  (Pen. Code,[1] §§ 487, subd. (a), 503.)  The charges arose out of defendant's employment as head cashier at a Barnes & Noble in Fairfield, California.  Defendant admitted she would keep customers' money and receipts after they made cash purchases and later create fraudulent returns.  Through the scheme, which was

---

[1] All statutory references are to the Penal Code.

carried out for a year, defendant embezzled about $8,400. In January 2010, defendant entered a plea of no contest.

In February 2010, the trial court suspended defendant's sentence and placed her on three years of formal probation with the condition she serve 60 days in the Solano County jail. Defendant was also ordered to pay $8,300 in direct restitution to the victim, to be paid in $50 monthly installments. The restitution amount was later reduced to $6,000 by stipulation of the parties. The court warned: "I want to make something clear. The reason [defendant] is getting probation is to pay restitution. If this goes by and we are dealing with this in a year and there have been no payments or very little paid, what the impression to the Court will be is that she is not interested in staying on probation." Defendant indicated she would be able to pay $50 a month.

At the time she was sentenced to probation, defendant was unemployed and single, but was receiving financial assistance from her father, as well as AFDC (Aid to Families with Dependent Children) benefits in the amount of $561 per month to support her two-year-old daughter. During her probation, defendant participated in two residential treatment programs for substance abuse, one in October 2011 and the other in late 2012.

By December 2012, defendant had paid only $120 in restitution. Around that time, defendant informed the probation department she was still unemployed and had no means to pay off the outstanding balance. Defendant indicated she was residing in an emergency homeless shelter, and her felony conviction was hampering her job search. The probation officer concluded defendant's failure to pay restitution was not willful and recommended an extension of probation in order to allow time for full repayment.

At a January 28, 2013 hearing, the court disagreed with the probation officer's assessment that defendant's noncompliance was not willful, stating it could not accept defendant had been unable to find work: "She may not be able to find the job she wants, the job that pays the highest amount, but there's plenty of jobs that she could be doing." The court extended probation to the maximum period of five years and scheduled a progress report for July. It also ordered defendant to make a minimum monthly restitution payment of $50 beginning February 1, 2013, and continuing each month

2

thereafter. The court remarked: "If she has to pick up cans, she can do that for the $50, I don't care what she does as long as it's legitimate and she makes her payments on time."

Defendant worked as a housekeeper from around May to July 2013, during which time she made a restitution payment of $100. Defendant made no other restitution payments during this period.

On July 29, 2013, the court summarily revoked probation and set the matter for hearing on August 26, 2013. At the probation revocation hearing, defendant testified she quit her job as a housekeeper because she was pregnant and the pregnancy was high-risk because she had Type I diabetes. She explained the job conflicted with her doctor's appointments, she could not maintain her blood sugar with the job's meal schedules, and she could no longer climb stairs. Defendant also testified she had not had a stable residence since she left the residential treatment program for alcohol abuse in late 2012. She stated she was unable to make restitution payments because her income was only $97 per month, and most of that money was used to transport her daughter to and from school.

The court found defendant in violation of her probation, stating: "[S]he hasn't paid one thing. It's not the 50 dollars a month. Maybe she couldn't pay 50 dollars every month, but she could pay something. She could pay a nickel or a dime or a penny. Something. [¶] Her priorities are everything about her first, and then the victim, whenever she might get to it. And that's not okay." Along the same lines, the court opined defendant could pay $5 or $10 a month if she picked up cans for a living. The court also stated defendant's focus on her sobriety was "not a problem to the exclusion of her other [*sic*]—she could have paid five or ten dollars when she was in the [substance abuse] program." The court referred the matter to the probation department for a supplemental report and continued the hearing to November 14, 2013.

At the November 14 hearing, the court reinstated probation with all prior terms and conditions, including the condition that defendant pay a minimum of $50 of restitution per month. For the violation of probation, the court also ordered defendant to perform five hours of community service per week until she found gainful employment.

## II. DISCUSSION

Defendant requests we reverse the trial court's finding that she violated her probation by willfully failing to make the required restitution payments, as well as the resulting modification of her probation to include community service. The Attorney General moves to dismiss the appeal, arguing defendant seeks review of a nonappealable order. We find the modification of defendant's probation is reviewable because it implicates her substantial rights. As to the merits, we find the modification constituted an abuse of discretion because there was no evidence defendant's failure to pay restitution was willful.

### A. *Motion to Dismiss Appeal*

The Attorney General argues defendant has failed to identify an appealable order under section 1237, which provides, in relevant part: "An appeal may be taken by the defendant: [¶] (a) From a final judgment of conviction . . . . A sentence [or] an order granting probation . . . shall be deemed to be a final judgment within the meaning of this section. . . . [¶] (b) From any order made after judgment, affecting the substantial rights of the party."

According to her notice of appeal, defendant is appealing from an order or judgment dated November 14, 2013, the date on which the court reinstated probation with the additional condition defendant perform community service. The Attorney General asserts this type of order is not encompassed by section 1237, subdivision (a), since the court ultimately reinstated defendant's probation, and in any event, an order revoking probation is not appealable unless it results in the imposition of a sentence. As to subdivision (b), the Attorney General asserts defendant's brief does not reveal the "substantial rights" she seeks to protect.

We disagree with the Attorney General on the last point. "[A]n order revoking probation or modifying its terms is appealable as an 'order made after judgment, affecting the substantial rights of the party.' " (See *People v. Lazlo* (2012) 206 Cal.App.4th 1063, 1067, fn. 3.) Thus, our colleagues in Division Five have held appealable an order revoking and reinstating probation on the conditions that a defendant have no contact

4

with her codefendants and possess no identification of persons other than herself. (*Id.* at p. 1067 & fn. 3.) Likewise we hold an order reinstating probation with the additional condition of five hours of community service per week implicates a substantial right and is appealable under section 1237, subdivision (b).

The Attorney General argues defendant waived any challenge to the imposition of community service because she failed to raise the issue in her opening brief. She is correct that defendant's briefing focuses on the initial revocation of probation, rather than its reinstatement with additional conditions. Moreover, the only relief requested in defendant's opening brief is (1) reversal of the trial court's finding that defendant's failure to pay restitution was willful; (2) remand to modify and extend probation to the maximum term; and (3) a finding that if defendant is unable to pay restitution by the conclusion of the term, the trial court must discharge defendant from probation.[2] Nevertheless, since defendant identified the order reinstating probation with additional conditions in her notice of appeal, and since the court imposed additional probation conditions because it concluded defendant violated her probation, we find defendant's appeal sufficiently identifies an order affecting a substantial right.

**B.** *Willful Failure to Pay Restitution*

Turning to the merits of the appeal, defendant argues the trial court erred in finding she violated the terms of her probation by failing to pay restitution. At a probation revocation hearing, the prosecution has the burden to show a violation by a preponderance of evidence to support the violation. (*People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066.) Trial courts have been granted broad discretion to determine whether a violation has occurred. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445.) "Absent abuse of that discretion, an appellate court will not disturb the trial court's findings." (*People v. Self* (1991) 233 Cal.App.3d 414, 417.) We find the trial court abused its discretion here.

---

[2] As the Attorney General points out, the second request is moot and the third is not ripe. The trial court already extended probation to the maximum term, and it has yet to order the extension of probation beyond that term.

Where a defendant on probation fails to pay restitution as ordered, the court may only revoke probation if it determines the failure to pay was willful and the defendant has the ability to pay. (§ 1203.2, subd. (a).) In such cases, "the court must in some manner indicate it has considered the defendant probationer's willful failure to pay and ability to pay restitution and made a determination thereon. Although it need not recite any talismanic words or outline in detail all relevant factors it has considered in making its determination, the trial court must make apparent on the record, prior to exercising its discretion, that it has considered and weighed relevant factors in making the determinations required by the statute." (*People v. Self*, *supra*, 233 Cal.App.3d at p. 418.)

In this case, there was no evidence defendant's failure to pay restitution was willful or that she had the ability to pay. At the revocation hearing, defendant testified her income was only $97 per month, and most of that money was used to care for her daughter. Defendant also testified she had no stable residence, she was forced to quit her job as a housekeeper because of a high-risk pregnancy, and she could not find alternative employment due to her felony conviction. The prosecution did not present contrary evidence at the revocation hearing. A probation officer testified a memo drafted by another officer reflected defendant did not have the ability make the required restitution payments in December 2012, and he was not aware of any change in her circumstances since that time. Based on this record, there was no basis for the trial court to conclude defendant could afford restitution payments of $50 per month.

Nor did the trial court make apparent on the record that it considered defendant's ability to pay prior to finding a violation of probation. The trial court opined that, regardless of her employment situation, defendant should have tried to pay some portion of her restitution, even if it was "a nickel or a dime or a penny." But we are aware of no authority holding a defendant must make de minimus restitution payments in order to demonstrate compliance with the terms of his or her probation. We are also not persuaded by the trial court's suggestion that defendant could have collected cans to make her restitution payments. As an initial matter, there is no evidence such efforts

6

could support both defendant's restitution obligations and her family's basic needs. In any event, in light of defendant's high-risk pregnancy, collecting cans was not a feasible option for defendant.

The Attorney General argues the record demonstrates the trial court had reason to doubt defendant's representation she did not have the ability to make payments. Based on the trial court's remark that the underlying crime "was a pretty sophisticated little scheme," the Attorney General asserts the court could have concluded defendant had the intelligence and social skills to hold some position. Alternatively, the Attorney General argues because defendant's crime was one of moral turpitude, the court could have found defendant lied about her ability to find work. Neither argument holds up to scrutiny. There is no evidence in the record regarding defendant's employment qualifications, and it is highly doubtful prospective employers would view the sophistication of her crime as evidence of a valuable skill. Further, while we cannot second-guess the trial court's credibility determinations, the Attorney General has yet to point to any evidence suggesting defendant had undisclosed assets or income or that she did not look for meaningful work during her probation.

The Attorney General also asserts defendant's failure to pay was willful because she initially stated she could make restitution payments through support from her father. But defendant merely testified her father had been very cooperative and wanted to help if he could. In any event, defendant's father was under no obligation to make defendant's restitution payments, and the pertinent question is whether defendant—not her family— had the ability to pay. Moreover, at the probation revocation hearing, defendant suggested her father's support had limits, testifying that although she did not have a stable residence, her father only allowed her to stay with him during the weekends.

### III.  DISPOSITION

We reverse the trial court's finding that defendant violated her probation by willfully failing to pay restitution, along with the modification of the terms of defendant's probation to include community service.

7

                                    _____

                                    Margulies, Acting P.J.

We concur:

_____

Dondero, J.

_____

Banke, J.

8